UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL ANTONIO EVANS, | No.  2:25-cv-3408 AC P |
| Plaintiff, | |
| v. | ORDER |
| EL DORADO COUNTY SHERIFF, et al., | |
| Defendants. | |

Plaintiff is a county inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983 without a lawyer.

I.    Procedural History

Shortly after filing the original complaint, plaintiff filed a document styled as an amended complaint (ECF No. 5), which the court construed as a motion to amend because it was not a complete pleading (ECF No. 7).  The motion was denied as unnecessary, and plaintiff was instructed to file an amended complaint within thirty days or the court would presume he intended to proceed on the original complaint.  Id.  Plaintiff proceeded to file a first amended complaint. ECF No. 12.  He has also filed a motion for service of summons by the United States Marshal (ECF No. 13), a motion to appoint counsel (ECF No. 14), a motion for reconsideration of a previous request for counsel (ECF No. 17), and a motion for a sixty-day extension of time (ECF No. 18).

1

II.    First Amended Complaint

A.    Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Id. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

B.    Factual Allegations of the First Amended Complaint

The first amended complaint alleges that defendants El Dorado County Sheriff, Martinova, Lozono, Grover, Hazelet, and Doe violated plaintiff's rights under the First, Eighth,[1]

---

[1] Plaintiff indicates in the complaint that he was transferred to the jail from the custody of the California Department of Corrections and Rehabilitation, indicating that he is a convicted prisoner and his claims of cruel and unusual punishment therefore arise under the Eighth (continued)

and Fourteenth Amendments.  ECF No. 12.  Plaintiff alleges that on October 24, 2025, the El Dorado County Sheriff's Department housed him in the general population with active gang members even though he is a validated former gang member and snitch, which put his safety at risk.  Id. at 4.  Upon his arrival, plaintiff twice notified defendant Doe, who he identifies as an intake deputy, about his status as a former gang member and snitch and he requested protective custody.  Id.  Martinova later told plaintiff that he was being assigned to H-pod, a protective custody housing unit.  Id.  However, when he was transferred to the housing pod he discovered that it was a general population housing pod, and he was threatened by gang members who told him to leave the pod or he would get hurt.  Id. at 5.  Upon informing the control tower officer that he had been threatened, plaintiff was escorted by Martinova to solitary confinement where he was housed for sixty days.  Id.

While in solitary confinement, plaintiff's food was occasionally contaminated or missing, he was barely given yard time, his requests for forms were either ignored or he was given the wrong forms, and some of his grievances were ignored.  Id.  He alleges that at one point Hazelet screamed at him to "drop it!"  Id.  Finally, plaintiff alleges that on January 11, 2026, Hazlet refused to take his outgoing legal mail because he did not have proper envelopes stamped as legal mail, which had never been required in the past.  Id. at 6.  He asserts that the conduct he was subjected to was discriminatory and retaliatory.  Id. at 5-6.

### C. Failure to State a Claim

Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the complaint does not state any valid claims for relief.  Plaintiff has not made any allegations against the El Dorado County Sheriff, Lozono, or Grover and therefore fails to state any claims for relief against them.  To the extent plaintiff's claim that the sheriff's department placed him in the general population is intended to be a claim against the sheriff, he has not alleged any facts

---

Amendment.  See Vazquez v. County of Kern, 949 F.3d 1153, 1163-64 (9th Cir. 2020) ("[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment of convicted prisoners.'" (quoting Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004))).

demonstrating the sheriff's personal involvement in his placement.  He also has not alleged facts showing that his placement was the result of a policy or practice of the sheriff's department such that the department or the sheriff would be liable.

Although plaintiff has alleged conduct by the Doe defendant, Martinova, and Hazelet, his allegations are insufficient to state any claims for relief against them.  There are no facts showing that the Doe defendant failed to report plaintiff's safety concerns or was responsible for plaintiff's housing assignment.  To the extent he claims Martinova notified him that he was going to H-pod and that it was a protective custody housing unit, while it appears that Martinova was incorrect about the status of H-pod, there are no allegations showing Martinova was aware of plaintiff's specific safety concerns or had any involvement in plaintiff's housing assignment.  Additionally, while plaintiff alleges Martinova escorted him from H-pod to solitary confinement after he was threatened by other inmates, there are no facts indicating that Martinova was responsible for his extended assignment to solitary confinement.  With respect to Hazelet, plaintiff does not explain what Hazelet was referring to when she yelled at him to "drop it," and even if the court assumes she was referring to a grievance, plaintiff does not identify any additional action by Hazelet related to his pursuit of grievances.  A single instance of an officer telling an inmate to drop it, without more, does not constitute conduct that would chill a prisoner of ordinary firmness from pursuing future protected conduct.  Hazelet's alleged refusal to take plaintiff's legal mail unless it was in a specific envelope also fails to state a claim for either retaliation or interfering with plaintiff's access to the courts.  There are no facts indicating that Hazelet's conduct was in retaliation for protected conduct, and plaintiff has not identified what he was trying to mail or how he was injured by the alleged failure to accept the mail unless it was in a marked envelope.

Finally, plaintiff has not stated any claims for relief based on his placement in solitary confinement because he has not identified any individual responsible for his conditions of confinement.  He also fails to state any claims for discrimination because he has not alleged any facts showing that he was treated differently because of his membership in a protected class or that he was treated differently than other similarly situated prisoners without any legitimate reason.

Plaintiff may try to fix these problems by filing an amended complaint.  In deciding whether to file an amended complaint, plaintiff is provided with the relevant legal standards governing his potential claims for relief which are attached to this order.  See Attachment A. Because the complaint does not state any cognizable claims, plaintiff's motion for service of the complaint will be denied.[2]

### D. Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  The complaint must also allege in specific terms how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes any prior complaints.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted).  Once plaintiff files an amended complaint, any previous complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

### III.    Motions for Appointment of Counsel and for Reconsideration

Plaintiff has filed a second motion for appointment of counsel in which he seeks

---

[2] Plaintiff is informed that it is unnecessary to request service of the complaint because he has been granted in forma pauperis status, which entitles him to service of the complaint by an officer of the court.  See 28 U.S.C. § 1915(d) ("officers of the court shall issue and serve all process"). In the event plaintiff files a complaint for which service is appropriate, the court will order service by the United States Marshal without the need for a motion.

5

appointment on the grounds that he is indigent and suffers from PTSD and ADHD.  ECF No. 14.

The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

"When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved.'"  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)).  The burden of demonstrating exceptional circumstances is on the plaintiff.  Id.  Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.

The circumstances outlined by plaintiff are common to most inmates.  Moreover, plaintiff has not explained how his PTSD or ADHD prevent him from pursuing this case without assistance of counsel.  For these reasons, plaintiff has not shown the existence of extraordinary circumstances warranting the appointment of counsel.

Plaintiff also seeks reconsideration of the denial of his previous motion for appointment of counsel on the ground that he intends to file a Brady/Johnson motion, which requires counsel because "Pitchess inquiries involve ex-parte communications, in camera hearings, and are subject to confidential and privileged personel [sic] records."[3]  ECF No. 17.  However, the procedures plaintiff references apply to California state or criminal proceedings and are not applicable here. To the extent plaintiff's motion is based on the argument that he requires counsel to conduct discovery generally, the request is premature.  Plaintiff has not yet stated a cognizable claim for

---

[3] Plaintiff appears to be referring to Brady v. Maryland, 373 U.S. 83 (1963) (recognizing prosecutor's due process obligation to disclose exculpatory evidence); People v. Superior Court (Johnson), 61 Cal. 4th 696 (2015) (holding a criminal defendant may use Pitchess procedures to obtain disclosure of Brady material in an officer's personnel file); and Pitchess v. Superior Court, 11 Cal. 3d 531 (1974) (establishing process for discovery of otherwise confidential personnel records in California).

relief and discovery has therefore not begun.  Moreover, once discovery commences, plaintiff can always file a motion to compel if he believes his requests for discovery are inappropriately denied.  Plaintiff therefore fails to demonstrate the existence of extraordinary circumstances warranting the appointment of counsel and the motion for reconsideration will be denied.

IV.     Motion for Extension of Time

Plaintiff has filed a motion for a sixty-day extension of time.  ECF No. 18.  However, he does not identify the deadline he seeks to extend and at the time he filed the motion there were no deadlines pending.  The motion will therefore be denied.

V.     Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Your complaint will not be served because the facts alleged are not enough to state a claim.  You are being given a chance to fix these problems by filing an amended complaint.  If you file an amended complaint, pay particular attention to the legal standards attached to this order.  Be sure to provide facts that show exactly what each defendant did to violate your rights.  **Any claims and information not in the amended complaint will not be considered.**

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for service (ECF No. 13) is DENIED.

2.  Plaintiff's motion to appoint counsel (ECF No. 14) is DENIED.

3.  Plaintiff's motion for reconsideration (ECF No. 17) is DENIED.

4.  Plaintiff's motion for an extension of time (ECF No. 18) is DENIED.

5.  Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

6.  Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint."

7.  Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil

7

Procedure.

8. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: May 4, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

I.    Failure to Protect

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. He must then fail to take reasonable measures to lessen the substantial risk of serious harm. Id. at 847. Negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

II.    Conditions of Confinement

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met." Id. at 834.

"First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To be sufficiently serious, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 732 (9th Cir. 2000). Rather, "extreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). "More modest deprivations can also form the objective basis of a violation, but only if such

1

deprivations are lengthy or ongoing." Johnson, 217 F.3d at 732. Placement in administrative segregation, by itself, does not rise to the level of an Eighth Amendment violation. See Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) ("administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence" (citation omitted)).

Second, the prison official must subjectively have a "sufficiently culpable state of mind," "one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (citations omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. He must then fail to take reasonable measures to lessen the substantial risk of serious harm. Id. at 847. If a prison official's response to a known risk is reasonable, they "cannot be found liable." Id. at 845. Negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

III.    Retaliation

To state a claim for retaliation, a plaintiff must allege defendants (1) took adverse action against plaintiff (2) because of (3) plaintiff's protected conduct, and that the action (4) would chill an inmate of reasonable firmness from future protected conduct and (5) lacked a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

An adverse action is an act (or failure to act) by prison officials which causes harm, and "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out." Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (emphasis in original). To show defendants retaliated "because of" the plaintiff's actions, the plaintiff must show the defendants were motivated by his protected conduct. See Crawford-El v. Britton, 523 U.S. 574, 592 (1998) (proof of defendant's general animosity toward plaintiff would not necessarily show her conduct was motivated by plaintiff's protected conduct). Protected conduct refers to acts taken by the plaintiff that are protected by the First Amendment and may include lawsuits and grievances, as well as verbal complaints or threats to sue. See Rhodes, 408 F.3d at 567 (prisoners have a First Amendment right to file prison grievances and pursue civil litigation); Shepard v. Quillen, 840

2

F.3d 686, 688 (9th Cir. 2016) (prisoners have "First Amendment right to report staff misconduct"); Jones v. Williams, 791 F.3d 1023, 1036 (9th Cir. 2015) (threats to sue constitute protected conduct); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (form of complaint, including verbal, "is of no constitutional significance").

IV.    Equal Protection

The Fourteenth Amendment's Equal Protection Clause requires the State to treat all similarly situated people equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). Alternatively, a plaintiff may state an equal protection claim if he shows similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate government purpose. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

V.    Access to the Courts

A prison's interference with legal mail may violate an inmate's right of access to the courts which is protected by the First Amendment's right to petition the government and the due process clause of the Fourteenth Amendment. See Snyder v. Nolen, 380 F.3d 279, 290-291 (7th Cir. 2004) (discussing the development of cases concerning a prisoner's right of access to the courts). Prison officials may not actively interfere with an inmate's right to litigate. Silva v. Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011), overruled on other grounds by Richey v. Dahne, 807 F.3d 1202, 1209 n. 6 (9th Cir. 2015). In order to state a claim for the denial of access to the courts, a plaintiff must allege he suffered an actual injury, which is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. Lewis v. Casey, 518 U.S. 343, 349 (1996).

VI.    Personal Involvement and Supervisory Liability

"Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164,

3

167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). In other words, to state a claim for relief under section 1983, plaintiff must link each individual defendant with some affirmative act or omission that shows a violation of plaintiff's federal rights.

Furthermore, "[t]here is no respondeat superior liability under section 1983," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted), which means that a supervisor cannot be held responsible for the conduct of his subordinates just because he is their supervisor. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id. A supervisor may also be liable, without any personal participation, if he "implement[ed] a policy so deficient that the policy 'itself is a repudiation of the constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987)).

VII.    County Liability

Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. Monell v. Dep't of Social Services, 436 U.S. 658, 691, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. To properly plead a Monell claim based on an unconstitutional custom, practice, or policy, plaintiff must demonstrate that (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) such policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. See Plumeau v. Sch. Dist. No. 40

4

Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). The municipal policy at issue must be the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)).